**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Eric Anthony GALLEGOS, Respondent.**

**No. 96SC373.**

Supreme Court of Colorado,
En Banc.

Sept. 22, 1997.

Rehearing Denied Oct. 27, 1997.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Beth L. Krulewitch, Deputy State Public Defender, Denver, for Respondent.

. Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari in *People v. Gallegos*, 926 P.2d 156 (Colo.App.1996), to review the judgment of the court of appeals reversing the second-degree murder conviction of the respondent, Eric Gallegos.[1] The trial court dismissed two of the three counts against Gallegos at the preliminary hearing for lack of probable cause. The prosecution appealed the dismissal, but eventually chose to withdraw its appeal. Prior to trial, Gallegos moved to dismiss the remaining charge, claiming he was denied his statutory right to a speedy trial pursuant to section 18–1–405, 8B C.R.S. (1986 & 1996 Supp.). The trial court denied the motion and a jury convicted

---

1. Our order granting certiorari set forth the following issues:

 (1) Whether the People's right, under § 16–12–102(1), 8AC.R.S. (1996 Supp.), to appeal the partial dismissal of a multi-count information may be invoked only when dismissal of charges is predicated on the unconstitutionality of statutes.

 (2) Whether the People's appeal of a partial dismissal order tolls the operation of the speedy trial statute.

Gallegos. The court of appeals reversed the conviction and directed the trial court to dismiss the charges with prejudice. It concluded that Gallegos was denied his statutory right to a speedy trial because the speedy trial period continued to run during the prosecution's appeal of the trial court's probable cause determination. *See Gallegos,* 926 P.2d at 158.

We hold that the prosecution's appeal of a trial court's partial dismissal of a multi-count information at a preliminary hearing is an interlocutory appeal, within the meaning of the speedy trial statute, which tolls the running of the six-month statutory speedy trial period. *See* § 18–1–405(6)(b), 8B C.R.S. (1986). Because of our resolution of this issue, we do not reach the issue of whether the prosecution's appeal was proper under section 16–12–102(1), 8A C.R.S. (1996 Supp.). Accordingly, we reverse the judgment of the court of appeals and remand to that court for further proceedings.

## I.

On September 18, 1992, Gallegos and a juvenile were charged by information with first-degree murder,[2] felony murder,[3] and conspiracy to commit first-degree murder,[4] based on the stabbing death of Jason Gutierrez. Pursuant to section 16–5–301, 8A C.R.S. (1986 & 1996 Supp.), and Crim. P. 7, both defendants requested a preliminary hearing, which was held on November 4 and 5, 1992. The trial court dismissed the felony murder count against Gallegos, and the conspiracy counts against both Gallegos and the juvenile, due to a lack of probable cause.

On November 18, 1992, Gallegos entered a plea of not guilty to the remaining charge of first-degree murder. Pursuant to section 18–1–405(1), 8B C.R.S. (1986), Gallegos was entitled to a trial by May 18, 1993, six months from the date of his plea.

On December 22, 1992, the prosecution filed a notice of appeal in the court of appeals challenging the trial court's dismissal of the felony murder count and the conspiracy counts. The prosecution cited section 16–12–102, 8A C.R.S. (1986), and *People v. Jefferson,* 748 P.2d 1223 (Colo.1988), as authority for the jurisdiction of the court of appeals to hear the appeal. The prosecution also filed a motion in the trial court to stay the proceedings pending the outcome of the appeal. Gallegos objected, arguing to the trial court that its probable cause determinations were clearly correct and that the prosecution had taken the appeal in bad faith, as a stalling tactic. Gallegos also maintained that the prosecution's appeal of the trial court's probable cause determinations could take over a year while he remained in custody. The trial court granted the stay.

On March 2, 1993, the court of appeals sent notice to the parties that the record on appeal had been filed and that the prosecution's opening brief was due on April 7. On April 5, 1993, the prosecution asked the court of appeals to dismiss the appeal. The prosecution had reached a plea disposition with the juvenile defendant, making him available for testimony, and did not wish to proceed with the appeal. On April 8, 1993, the court of appeals granted the prosecution's motion to dismiss the appeal. On the same day the appeal was dismissed, Gallegos filed a motion in the court of appeals for sanctions against the prosecution for the filing of a frivolous appeal. The appeal was frivolous, Gallegos argued, because the ruling at the preliminary hearing was correct. This motion was denied by the court of appeals. The defendant did not raise the question of whether the prosecution's appeal was proper under section 16–12–102(1) in the appeal from the probable cause determination. The mandate of the court of appeals was issued on May 10, 1993.

On May 14, 1993, Gallegos filed a motion with the trial court demanding a speedy trial. Gallegos noted that he had entered his plea of not guilty on November 18, 1992, that he had not waived his right to a speedy trial, that the speedy trial period would expire on May 18, 1993, and that no trial date had been set. On May 19, 1993, Gallegos filed a mo-

---

**2.** § 18–3–102(1)(a), 8B C.R.S. (1986).

**3.** § 18–3–102(1)(b), 8B C.R.S. (1996 Supp.).

**4.** § 18–2–201, 8B C.R.S. (1986 & 1996 Supp.).

tion to dismiss the charge against him for lack of a speedy trial. Gallegos argued that his speedy trial right was violated for two reasons: under section 18–1–405, a direct appeal to the court of appeals does not toll the speedy trial period; and even if the speedy trial period was tolled, it was ineffective in this case because the prosecution's appeal was taken in bad faith.

In denying Gallegos' motion, the trial court determined that the prosecution's appeal had tolled the speedy trial period. Also, the court found that the decision to file the appeal was the only remedy available to the prosecution to challenge its dismissal of two counts of the information. Thus, the trial court found that the appeal was not taken in bad faith and reset the trial for August 23, 1993. Trial commenced as scheduled and a jury convicted Gallegos of second-degree murder and accessory after-the-fact to manslaughter.

On appeal, Gallegos argued that his conviction should be reversed because he was denied his statutory right to a speedy trial. The prosecution maintained that its appeal of the trial court's probable cause determination was an interlocutory appeal, so the delay it caused was excludable from the speedy trial period under section 18–1–405(6)(b).

The court of appeals held that although the statutory speedy trial period is tolled by an interlocutory appeal, the appeal in this case did not qualify as interlocutory because it was not authorized by statute or rules, and was materially different from other types of interlocutory appellate proceedings. *See Gallegos*, 926 P.2d at 160–63. The court of appeals also held that it had jurisdiction to hear appeals only of final judgments under section 13–4–102(1), 6A C.R.S. (1987), and an interlocutory order is by definition not a final judgment. *Id.* at 163–64. The court of appeals concluded that Gallegos' right to a speedy trial had been violated and remanded to the trial court with directions to dismiss the charges with prejudice. *Id.* at 164.

## II.

We first address whether the dismissed appeal in this case was an interlocutory appeal within the meaning of that term as used in section 18–1–405(6)(b) of the speedy trial statute.

 The speedy trial statute, section 18–1–405(1), 8B C.R.S. (1986), provides that if a trial is not commenced within six months from the date of the defendant's entry of a plea of not guilty, the pending charges shall be dismissed. However, certain periods of delay are excluded in section 18–1–405(6), 8B C.R.S. (1996 Supp.), which provides in pertinent part:

> (6) In computing the time within which a defendant shall be brought to trial as provided in subsection (1) of this section, the following periods of time shall be excluded:
>
> . . .
>
> (b) The period of delay caused by an interlocutory appeal whether commenced by the defendant or the prosecution. . . .

*See also* Crim. P. 48(b). The six-month period continues to run unless the nature of the delay fits within one of the exclusions under the statute. *See People in the Interest of N.P.*, 768 P.2d 706, 708 (Colo.1989). The language of section 18–1–405(1) is mandatory and leaves no discretion for the court to make exceptions to the six-month rule beyond those delineated in section 18–1–405(6). *See People v. Byrne*, 762 P.2d 674, 676 (Colo.1988). The speedy trial statute was intended to complement and render constitutional speedy trial guarantees more effective. *See People v. Bell*, 669 P.2d 1381, 1383 (Colo.1983). However, we must also avoid applying the speedy trial provisions in a "wooden or mechanistic fashion" which would defeat the important countervailing interest in effective enforcement of criminal laws. *See People v. Runningbear*, 753 P.2d 764, 767 (Colo.1988) (citing II ABA Standards for Criminal Justice, Speedy Trial, § 12–2.1, Commentary (1986)).

The prosecution maintains that the appeal of the trial court's partial dismissal must be construed as an interlocutory appeal, which is excludable under section 18–1–405(6)(b). To resolve this issue, we examine the meaning of "interlocutory appeal" as the term is used in section 18–1–405(6)(b).

 While section 18–1–405(6)(b) excludes delays caused by interlocutory appeals from the speedy trial period, the term "interlocutory appeal" is not defined in the speedy trial statute. In considering whether the prosecution's appeal in this case should be characterized as interlocutory for speedy trial purposes, we must construe the language of the speedy trial statute and other related statutes in order to ascertain and effectuate the intent of the General Assembly. *See Runningbear*, 753 P.2d at 767. Because certain conflicts inhere in the existing statutory scheme, we must interpret these statutes in the manner which best gives consistent, harmonious, and sensible effect to the entire scheme. We presume that the General Assembly intends a just and reasonable result, and we must avoid constructions which lead to absurd results. *Id.*

 We begin our analysis by acknowledging that the trial court's partial dismissal in this case can be characterized as an interlocutory order. *Black's Law Dictionary* defines "interlocutory" as "[s]omething intervening between the commencement and the end of a suit which decides some point or matter, but is not a final decision of the whole controversy." *Black's Law Dictionary* 815 (6th ed.1990); *see People v. Ferguson*, 653 P.2d 725, 727 (Colo.1982); *see also Dusing v. Nelson*, 7 Colo. 184, 186, 2 P. 922, 923 (1884)(noting that "if the order entered in a cause does not put an end to the action, but leaves something further to be done before the rights of the parties are determined, it is interlocutory....."). A final judgment in a criminal case does not come until the defendant is acquitted, the charges are dismissed in their entirety, or the defendant is convicted and sentence is imposed. *See Hellman v. Rhodes*, 741 P.2d 1258, 1259 (Colo.1987). Thus, when the ordinary course of a criminal prosecution is interrupted to determine whether the trial court properly dismissed some counts of a multi-count information, the appeal is interlocutory in nature.

Section 16–12–102(2) provides for interlocutory appeals of trial court orders to return property to the defendant, to suppress evidence, or to suppress extra-judicial confessions or admissions brought under Crim. P. 41(e), 41(g) and 41.1(i). These interlocutory appeals are filed in the supreme court under an expedited filing and briefing schedule. If section 16–12–102(2) does not provide appellate jurisdiction, another basis for appellate jurisdiction is section 16–12–102(1), which provides that appeals to an appellate court may be taken from final judgments. *See People v. Young*, 814 P.2d 834, 837 (Colo. 1991). Because an order dismissing some counts of a multi-count information is not appealable under section 16–12–102(2), we have chosen to treat such orders as final judgments for purposes of conferring appellate jurisdiction. *See People v. Jefferson*, 748 P.2d 1223, 1224 (Colo.1988).

In *Jefferson*, the prosecution also appealed from a partial dismissal of a multi-count information. The defendant argued that appellate courts lacked jurisdiction to entertain the appeal because appellate jurisdiction was limited by rule to final judgments, and the order dismissing only some counts was not final because the prosecution could still proceed to trial on the undismissed counts. *Id.* Recognizing our prior practice of permitting appellate review of trial court orders dismissing some counts of a multi-count information, we chose to characterize such orders as final judgments for purposes of conferring appellate jurisdiction under section 16–12–102(1). *Id.* We acknowledged in our discussion that an order dismissing fewer than all of the charges was not a true final judgment disposing of the case, but was analogous to a final judgment with respect to the dismissed charges—it effectively terminated the prosecution of those particular charges. *Id.* at 1225; *see also People v. Cochran*, 176 Colo. 364, 366, 490 P.2d 684, 685 (1971)(noting that an order dismissing an information is a final judgment and, therefore, is appealable). Treating a partial dismissal of a multi-count information as a final judgment permitted appellate review under section 16–12–102(1) and C.A.R. 1. *Id.* Our discussion in *Jefferson* thus acknowledges that the meaning of "final judgment" may be relative to a case or to a particular part of a case. The dismissal is analogous to a final judgment with respect to the dismissed charges, but is in the nature of an interlocutory order in the context of the entire criminal prosecution.

There is some inherent tension in characterizing an order as both interlocutory and final. We last directly addressed this tension in *People v. Young*, 814 P.2d 834 (Colo.1991). There, the prosecution appealed a trial court order declaring the death penalty statute unconstitutional. The appeal was filed in the supreme court, invoking section 16–12–102(1) as the source of this court's appellate jurisdiction. We determined that the trial court's order was interlocutory in nature but was not appealable under section 16–12–102(2) and C.A.R. 4.1. We also held that the order was not a final judgment under section 16–12–102(1) and C.A.R. 1. Rather than dismiss the appeal, we chose to exercise our original jurisdiction to hear it under C.A.R. 21. *Young*, 814 P.2d at 836–39.

In considering whether the appeal in *Young* could be considered interlocutory, we stated:

> In construing section 16–12–102 as a whole, we *presume* that the legislature's specific authorization of prosecutorial interlocutory appeals in subsection 16–12–102(2) combined with its failure to provide such authorization for other interlocutory appeals under subsection 16–12–102(1) indicates its intention to confine interlocutory appeals to those specified under subsection 16–12–102(2).

*Young*, 814 P.2d at 837 (emphasis added). Under this presumption, the appeal of the partial dismissal in Gallegos' case would not be interlocutory because it is brought under section 16–12–102(1) rather than section 16–12–102(2).

Our presumption in *Young* does not control whether an appeal is interlocutory for statutory speedy trial purposes. *Young* arrived at its presumption that a section 16–12–102(1) appeal could not be interlocutory by relying on the principle of statutory construction that, where a statute specifies particular situations in which it is to apply, the statute is ordinarily to be construed as excluding from its operation all other situations not specified. *Young*, 814 P.2d at 837. At the time, this generic principle of statutory construction may have provided a satisfactory answer to the question of whether section 16–12–102(1) appeals would be permitted as an interlocutory appeal, disrupting the course of a criminal prosecution. A careful examination of our General Assembly's use of the term "interlocutory" reveals that the question of whether the appeal is authorized by section 16–12–102(1) or section 16–12–102(2) does not resolve the issue of whether it is interlocutory within the meaning of section 18–1–405(6)(b).[5]

First, we note that interlocutory appeals contemplated by section 16–12–102(2) are not coextensive with the interlocutory appeals contemplated by the speedy trial statute. Section 18–1–405(6)(b) excludes from the speedy trial period "[t]he period of delay caused by an interlocutory appeal *whether commenced by the defendant* or the prosecution." (Emphasis added.) It is thus apparent that the prosecution's interlocutory appeals under section 16–12–102(2) are not the only appeals in criminal cases which may be considered interlocutory, because section 18–1–405(6)(b) contemplates interlocutory appeals brought by the defendant as well as the prosecution. *See People v. Ferguson*, 653 P.2d 725, 727 (Colo.1982).

Second, application of our presumption in *Young* may lead to an impractical result. Under the analysis of *Young*, if we were to conclude that the prosecution has a right to appeal the trial court's partial dismissal under section 16–12–102(1), the prosecution

---

5. The General Assembly relied on the ABA Standards for Criminal Justice, Speedy Trial, § 2.3(a)(1967), entitled "Excluded Periods," when it drafted the tolling provisions for Colorado's speedy trial statute. *See* Colorado Criminal Code, First Draft and Legislative Draft, § 40–1–505 (1971)(comments pertaining to Oct. 15, 1970, draft). This section specifically excludes competency hearings, hearings on pretrial motions, interlocutory appeals, and trials of other charges from the speedy trial time requirement. However, the commentary to section 2.3(a) does not explain the exact nature of interlocutory appeals included in the ABA standard. When the General Assembly enacted the speedy trial statute, it modified the ABA's interlocutory appeal provision found in section 2.3(a) by providing that interlocutory appeals included those made by both the prosecution and the defendant. *See* § 40–1–505, 12 C.R.S. (1970–71 Supp.). Thus, while the origin of the interlocutory appeal provision in the speedy trial statute is discernible from the legislative history, its precise meaning is not.

would be unable to exercise that right immediately if a defendant wished to assert his statutory speedy trial rights. If the prosecution waited to appeal until after trial, the issue would be moot. *See People v. Lucero,* 654 P.2d 835, 836 (Colo.1982) (disapproving of but not reversing defendant's acquittal due to double jeopardy concerns); *People v. Lewis,* 791 P.2d 1152, 1154 (Colo.App.1989) (similarly disapproving of trial court's partial dismissal at preliminary hearing, where the prosecution appealed after trial was completed).

The General Assembly amended section 16–12–102(1), in response to *Young,* providing that an adjudication that a death penalty statute is inoperative or inapplicable is a "final order which shall be immediately appealable...." Ch. 5, Sec. 1, § 16–12–102(1), 1991 Colo. Sess. Laws 15, 15 (2d Extraordinary Sess.). Such an order is not a final order in the sense of being a final disposition of the case. It is an interlocutory order which the General Assembly determined should be treated as if it were a final order for purposes of permitting immediate appellate review before the case is concluded. Thus, section 16–12–102(1) now permits appeals which are interlocutory in nature from orders which are analogous to final judgments. By this amendment, the General Assembly rejected the sharp line we tried to draw in *Young* between section 16–12–102(1) and section 16–12–102(2).

Since *Young,* the General Assembly has provided clear evidence in another context that it does not consider final judgments and interlocutory orders to be mutually exclusive terms. In a 1992 amendment to a provision of the Colorado Governmental Immunity Act, §§ 24–10–101 to –120, 10A C.R.S. (1988 & 1996 Supp.), the General Assembly provided that a trial court decision on whether a public entity enjoyed sovereign immunity from suit "shall be a final judgment and shall be subject to interlocutory appeal." § 24–10–108, 10A C.R.S. (1996 Supp.). The court of appeals recently interpreted this language in *Richland Development Co. v. East Cherry Creek Valley Water & Sanitation District,* 899 P.2d 371 (Colo.App.1995). The court noted that an order refusing to dismiss a civil complaint would not ordinarily be considered a final judgment. *Id.* at 372. However, the plain language of section 24–10–108 indicated that the General Assembly intended that orders refusing to dismiss a complaint on sovereign immunity grounds be treated as final judgments for purposes of appeal even though the appeal was interlocutory in nature. *Id.* at 372–73.

The General Assembly has thus demonstrated that it considers some orders to be final judgments for purposes of conferring appellate jurisdiction while at the same time interlocutory in the context of the case as a whole. This direct evidence of legislative intent demonstrates that our "presumption" in *Young* that the General Assembly did not intend for appeals under section 16–12–102(1) to be considered interlocutory in nature is not applicable to a consideration of whether statutory speedy trial is tolled by an appeal pursuant to section 16–12–102(1).

This conclusion conflicts with our recent discussion of interlocutory appeals in footnote fourteen of *People v. Warner,* 930 P.2d 564, 570 n. 14 (Colo.1996). This discussion in *Warner* is dicta. The speedy trial issue in *Warner* was decided on different grounds. *Id.* at 569–70 (delay caused by the prosecution's appeal was excludable from the speedy trial period under 18–1–405(6)(f) as caused by the defendant's motion to dismiss). The discussion of these issues in *Warner's* footnote fourteen predicted a resolution. Now that this issue is properly before us, we reject that prediction and acknowledge that the General Assembly has not used the terms "final judgment" and "interlocutory appeal" in a mutually exclusive manner. We no longer regard the issue of whether an appeal is taken pursuant to section 16–12–102(1) or section 16–12–102(2) as controlling the issue of whether it is an interlocutory appeal within the meaning of section 18–1–405(6)(b) of the speedy trial statute. This analysis distinguishes the issue of whether statutory speedy trial time is tolled from the issue of what may be immediately appealed, and effectuates the intent of the General Assembly.

▇▇▇ We hold that an interlocutory appeal, within the meaning of section 18–1–405(6)(b) of the speedy trial statute, is an

appeal which is taken in good faith before a defendant has been convicted and sentence is imposed, and which necessarily disrupts the course of proceeding to a final resolution of the allegations before the court. An appeal is taken in good faith when the assertion that such an appeal is authorized has arguable merit, is not taken for the purpose of delay, and the issues raised have a substantial effect on the prosecution's case. An appeal necessarily disrupts the course of proceeding to a final resolution when, absent a stay of the proceedings, there can be no effective remedy. We conclude that the prosecution's aborted appeal of the trial court's partial dismissal of charges at a preliminary hearing was an interlocutory appeal for statutory speedy trial purposes. The delay caused by this appeal is thus properly excluded from the speedy trial period under section 18–1–405(6)(b).

### III.

We also granted certiorari to consider the determination of the court of appeals that the prosecution may not appeal from a preliminary hearing finding of no probable cause, resulting in the partial dismissal of a multi-count information, under section 16–12–102(1), 8A C.R.S. (1996 Supp.). Because our determination of whether an appeal is interlocutory for statutory speedy trial purposes is not dependent on whether it is asserted under section 16–12–102(1) or section 16–12–102(2), and because the appeal from the preliminary hearing has been dismissed, we do not resolve this issue. This issue is better addressed when raised by a defendant in a motion to dismiss a pending interlocutory appeal.

We acknowledge that we have previously allowed such appeals under section 16–12–102(1). *See Abbott v. County Court,* 886 P.2d 730, 735 (Colo.1994)(the prosecution may appeal a district court's finding of no probable cause through a writ of prohibition under C.A.R. 21 or an appeal under section 16–12–102(1) and C.A.R. 4(b)(2)); *People v. Jefferson,* 748 P.2d 1223, 1224–25 (Colo.1988)(recognizing the prosecution's right to appeal partial dispositions of multi-count informations under section 16–1–

102(1)); *People v. Pedrie,* 727 P.2d 859, 860 (Colo.1986)(appeal of trial court's dismissal of some counts of a multi-count information for lack of probable cause); *People v. Williams,* 628 P.2d 1011, 1012 (Colo.1981)(same). The court of appeals has also allowed such appeals. *See People v. Lewis,* 791 P.2d 1152, 1153 (Colo.App.1989)(trial court's dismissal of some counts of a multi-count information for lack of probable cause appealed under section 16–12–102(1) and C.A.R. 4(b)(2)); *People v. Chaussee,* 847 P.2d 156 (Colo.App.1992)(partial dismissal appealed; no jurisdictional analysis), *rev'd in part on other grounds,* 880 P.2d 749 (Colo.1994).

We also observe that some of our cases attempted to carefully limit immediate prosecutorial appeals to those specified in section 16–12–102(2). *See People v. Warner,* 930 P.2d 564, 570 n. 14 (Colo.1996)(noting that "when the prosecution files an appeal in the court of appeals pursuant to § 16–12–102(1), there is no basis in statute or rule for treating the appeal as interlocutory in nature."); *People v. Young,* 814 P.2d 834, 837 (Colo. 1991), citing *Buder v. Sartore,* 774 P.2d 1383, 1387–88 (Colo.1989) (noting that "where a statute specifies particular situations in which it is to apply, the statute is ordinarily to be construed as excluding from its operation all other situations not specified.").

While we have rejected the distinction between appeals under section 16–12–102(1) and section 16–12–102(2) as controlling statutory speedy trial issues, we do not comment here on the continued usefulness of this analysis to determine whether an appeal may be pursued immediately and allowed to disrupt criminal proceedings. When an immediate appeal is filed and the trial court finds the appeal to be taken in good faith and the stay to be necessary, the appeal is interlocutory for statutory speedy trial purposes and tolls speedy trial time. Whether the appeal will be allowed is to be determined by the appellate court when properly raised in that appeal. At that time, the appropriate appellate court can give proper consideration to our previous constructions of section 16–12–102(1) and section 16–12–102(2), the disruption of criminal proceedings, the impact on

constitutional concerns, and other relevant considerations.

## IV.

The prosecution's aborted appeal of the trial court's dismissal of two counts of Gallegos' multi-count information at the preliminary hearing was an interlocutory appeal for purposes of tolling the speedy trial under section 18–1–405(6)(b). The period from the filing of the notice of appeal until the mandate issued after the court of appeals granted the prosecution's motion to dismiss is excluded from the speedy trial computation. We reverse the judgment of the court of appeals and remand to that court for further consideration of other issues raised by Gallegos' appeal.